1  Clark J. Burnham, CASB No. 041792
   Elizabeth C. Kim, CASB No. 225550
2  Eva P. Kwan, CASB No. 246034
   BURNHAM BROWN
3  A Professional Law Corporation
   P.O. Box 119
4  Oakland, California 94604
   ---
5  1901 Harrison Street, 11th Floor
   Oakland, California 94612
6  Telephone:    (510) 444-6800
   Facsimile:    (510) 835-6666
7  Email: cburnham@burnhambrown.com
            lkim@burnhambrown.com
8           ekwan@burnhambrown.com

9  Attorneys for Defendant
   NAVIGATORS INSURANCE COMPANY
10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13 | THOMPSON PACIFIC CONSTRUCTION, INC., | No. |
14 | | [Alameda County Superior Court, Action No. RG07320766] |
15 | Plaintiff, | |
   | | **DEFENDANT NAVIGATORS** |
16 | v. | **INSURANCE COMPANY'S NOTICE OF REMOVAL UNDER 28 U.S.C.** |
   | NAVIGATORS INSURANCE COMPANY | **SECTION 1441(b) (DIVERSITY)** |
17 | and Does 1-15, | |
18 | Defendants. | Complaint Filed:  April 13, 2007 |
19

20 TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE

21 NORTHERN DISTRICT OF CALIFORNIA:

22      PLEASE TAKE NOTICE that Defendant Navigators Insurance Company ("Defendant"

23 or "Navigators") hereby removes to this Court the state action described below:

24      1.      On or about April 13, 2007, Plaintiff Thompson Pacific Construction, Inc.

25 ("Plaintiff") filed an action pursuant to California Insurance Code Section 11580(b)(2) in

26 Alameda County Superior Court, Case No. RG07320766 ("Plaintiff's Complaint")(attached as

27 Exhibit A).  Plaintiff's Complaint is the only pleading that has been filed in this case as of the

28 date of this removal.

1

2.     Plaintiff's Complaint alleges facts related to and arising from an action entitled *Thompson Pacific Construction v. Jim Bird Construction et al*, Sacramento County Superior Court Case No. 03AS03633 ("Underlying Action"). Plaintiff's Complaint alleges that, in 2002, Plaintiff, a general contractor, entered into a subcontract with Navigators' insured, Jim Bird Construction ("Jim Bird"). Plaintiff later sued Jim Bird for breach of that subcontract in the Underlying Action. Plaintiff's Complaint alleges that Plaintiff and Jim Bird reached a settlement agreement and subsequent final judgment in the amount of $1,000,000, entered into on April 20, 2006. Plaintiff's Complaint further alleges that pursuant to California Insurance Code Section 11580(b)(2), Plaintiff is a judgment creditor of Navigators' insured, Jim Bird, and that it seeks to recover the full amount of the settlement/judgment of $1,000,000 from Navigators.

3.     Plaintiff alleges that the settlement in the Underlying Action, which included Navigators, agreed that "the purpose and intent of this Settlement Agreement, and the reason why NIC (Navigators) consented to this settlement, is to obviate the need for a trial in the Superior Court action between THOMPSON PACIFIC and BIRD since BIRD is effectively judgment proof, and to allow THOMPSON PACIFIC to proceed against NIC (Navigators) in an Insurance Code section 11580(b)(2) action to litigate the issue of what damages, if any are covered under the NIC (Navigators) policy."

4.     Plaintiff's Complaint alleges a first cause of action for recovery under Insurance Code Section 11580, and contends that there is in excess of $1,000,000 of potentially covered "property damage," including covered loss of use, owed under the insurance policies between Jim Bird and Navigators. Plaintiff's Complaint also alleges a second cause of action for declaratory relief regarding the amounts owed under the insurance policies.

5.     As alleged in Paragraph 1 of Plaintiff's Complaint, Plaintiff is a corporation organized and existing under the laws of the State of California, having its principal place of United States business in San Rafael, California.

6.     Navigators is a corporation organized and existing under the laws of the State of New York, having its principal place of business in New York, New York.

DEFENDANT NAVIGATORS INSURANCE COMPANY'S NOTICE OF REMOVAL
UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

**INTRADISTRICT ASSIGNMENT**

7.      Pursuant to Civil L.R. 3-5(b) and 3-2(c), the basis for assignment to the Oakland Division of the United States District Court for the Northern District of California is as follows:  the state action sought to be removed and as set forth in Plaintiff's complaint was commenced in the Superior Court of the State of California in and for the County of Alameda.

**JURISDICTION**

8.      At the time this action was commenced, and at all times subsequent thereto, the parties are and have been citizens of different states; the Plaintiff being a citizen of the State of California, and Defendant being a citizen of the State of New York.

9.      This action is a civil action for which this Court has original jurisdiction under 28 U.S.C. section 1332, and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. section 1441(b), in that this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.      This action being properly within this Court's original jurisdiction under 28 U.S.C. section 1332, this Court may declare the rights and other legal relations of interested parties in a case of actual controversy, pursuant to 28 U.S.C. sections 2201(a) and 2202.

11.      This Notice of Removal is timely filed under 28 U.S.C. 1446(b) in that it is filed within thirty (30) days of Defendant having received a copy of the complaint on April 18, 2007.

12.      Defendant's Notice to Adverse Parties of Removal to Federal Court is being filed in Alameda County Superior Court Case No. RG07320766.  A copy of the Notice is attached as Exhibit B.

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

13.      Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

///

///

DEFENDANT NAVIGATORS INSURANCE COMPANY'S NOTICE OF REMOVAL
UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

1    WHEREFORE, Defendant prays that the above-entitled action, currently pending in the

2  Superior Court of California, be removed to the United States District Court for the Northern

3  District of California and that this action proceed in this Court as a properly removed action.

4

5  DATED: 5|17|07                          BURNHAM BROWN

6

7

8                                          EVA P. KWAN

9                                          Attorneys for Defendant
                                           NAVIGATORS INSURANCE COMPANY

10

11    802571

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NAVIGATORS INSURANCE COMPANY'S NOTICE OF REMOVAL
UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

# EXHIBIT A

EXHIBIT A



1   ROBERT J. ROMERO (SBN 136539)
    MERLE J. PANICK (SBN 124731)
2   HINSHAW AND CULBERTSON LLP
    One California Street, 18th Floor
3   San Francisco, California  94111
    Tel: 415-362-6000
4   Fax: 415-834-9070

5

6   *Attorneys for Plaintiff*
    THOMPSON PACIFIC CONSTRUCTION, INC.

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF ALAMEDA

10                        UNLIMITED JURISDICTION

11  THOMPSON PACIFIC CONSTRUCTION,      )   Case No.  RG07320766
    INC.                                )
12                                      )
              Plaintiff,                )   JUDGMENT CREDITOR'S COMPLAINT
13                                      )   FOR DAMAGES PURSUANT TO
         vs.                            )   INSURANCE CODE SECTION 11580(b)(2)
14                                      )   AND DECLARATORY RELIEF
    NAVIGATORS INSURANCE COMPANY and)
15  Does 1-15,                          )
                                        )        BY FAX
16            Defendants.               )

17

18       Plaintiff and judgment creditor, Thompson Pacific Construction, Inc. ("Thompson Pacific" or

19  "plaintiff"), seeks damages pursuant to California Insurance Code section 11580(b)(2) against

20  defendant Navigators Insurance Company ("Navigators" or "NIC") and Does 1 through 15 and

21  alleges in this complaint ("complaint") as follows:

22       1.    At all relevant times, Plaintiff is a corporation organized and existing under the laws

23  of California, having its principal place of United States business in San Rafael, California.  At all

24  relevant times, Thompson Pacific has conducted business in California.

25       2.    Thompson Pacific alleges on information and belief that defendant Navigators

26  Insurance Company is an insurer which does business in California, including Alameda County, and

27

28                                          1

FILED
ALAMEDA COUNTY
APR 1 0 2007
By _____

1   has its principal place of business in Rye Brook, New York.  On information and belief, plaintiff

2   alleges that Navigators is a non-admitted insurer or surplus line insurer.

3       3.    Plaintiff does not presently know the true names and capacities of the defendants sued

4   herein as Does 1 though 15, inclusive.  Plaintiff will seek leave of court to amend this complaint to

5   allege said defendants' true names and capacities as soon as plaintiff ascertains them.

6       4.    At all times mentioned here, each defendant was the agent of the other and all

7   defendants were acting in the course and scope of such agency.

8                    **The Underlying Construction Project and Litigation**

9       5.    Thompson Pacific, a general contractor, entered into a subcontract in 2002 with the

10  Navigators' insured, Jim Bird Construction, Inc. ("Jim Bird")  Under the terms of the subcontract,

11  Jim Bird was to install water lines, gas lines, fire water lines and sewer lines for a  construction

12  project, among other work.

13      6.    Thompson Pacific sued Jim Bird in Sacramento Superior Court No. 03AS03633.  The

14  litigation between Thompson Pacific and Jim Bird ended in a settlement agreement and a subsequent

15  final judgment in the amount of $1,000,000 entered in the Sacramento Superior Court on April 20,

16  2006.  Jim Bird's work resulted in covered third party property damage, including covered loss of

17  use, as those terms are defined in the Navigator's insurance policy issued to Jim Bird.   A copy of the

18  judgment is attached as Exhibit A.

19                         **Judgment Creditor of Jim Bird**

20      7.    Pursuant to California Insurance Code section 11580(b)(2), Thompson Pacific sues

21  defendant Navigators as a judgment creditor and implied assignee of Navigators' insured, Jim Bird

22  Construction, Inc., a California corporation and Jim Bird dba Jim Bird Construction, Inc..

23  Thompson Pacific seeks to recover the full amount of the damages of $1,000,000 as stated in the

24  judgment.

25      8.    Pursuant to settlement agreement, Thompson Pacific is judgment creditor and entitled

26  to the coverage provided by the Navigators' liability policies issued to Jim Bird Construction, Inc.

27  for the liability of Jim Bird Construction Inc. to Thompson Pacific for damages covered by

28                                   2

1  Navigators' contracts of liability insurance, policy number GS102262 effective September 26, 2001

2  to September 26, 2002 and policy number GS204831, effective from September 26, 2002 to

3  September 26, 2003.

4        9.    The settlement agreement, executed by Navigators, satisfies the policy's requirement

5  for plaintiff's legal action against Navigators:

6            A person or organization may sue us to recover on an agreed

7            settlement or on a final judgment against an insured obtained after
          actual trial; but we will not be liable for damages that are not payable

8            under the terms of this Coverage Part or that are in excess of the
          applicable limit of insurance.  An agreed settlement means a

9            settlement and release of liability signed by us, the insured and the
          claimant or the claimant's legal representative.

10       10.    In their settlement agreement, the parties, including Navigators Insurance Company

11  agreed that the "purpose and intent of this Settlement Agreement, and the reason why NIC

12  (Navigators) consented to this settlement, is to obviate the need for a trial in the Superior Court

13  action between THOMPSON PACIFIC and BIRD since BIRD is effectively judgment proof, and to

14  allow THOMPSON PACIFIC to proceed against NIC (Navigators) in an insurance Code section

15  11580(b)(2) action to litigate the issue of what damages, if any are covered under the NIC policy."

16  NIC reviewed the agreement and approved of its terms.

17  <u>**The Navigators' Policies Issued to Jim Bird**</u>

18       11.    The Navigators Insurance Company issued policy number GS102262, effective

19  September 26, 2001 to September 26, 2002 and policy number GS204831, effective from September

20  26, 2002 to September 26, 2003 issued to Jim Bird.  These policies provide $2,000,000 General

21  Aggregate Limit (Other Than Products—Completed Operations), $2,000,000 Products—Completed

22  Operations Aggregate Limit and $1,000,000 Each Occurrence Limit.  These policies issued to Jim

23  Bird provide coverage for "property damage".  Completed Operations coverage is included in these

24  policies.  A copy of relevant portions of the Navigators' policy is attached as Exhibit B.

25       12.    The insuring agreement provides that Navigators will pay those sums Jim Bird

26  becomes legally obligated to pay because of "property damage" to which this insurance applies.

27       13.    "Property damage" is defined and means:

28                         3

1

       a.     Physical injury to tangible property, including all resulting loss of use of that   property.  All such loss of use shall be deemed

2
to occur at the time of the physical injury that caused it; or

3

       b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the

4
"occurrence" that caused it.

5     14.    Pursuant to stipulation and agreement, Thompson Pacific, as judgment creditor, is

6 entitled to recover under the Navigators policies for all the covered liability of Jim Bird, including

7 the final judgment and for all related property damage, including loss of use, covered by the liability

8 policy and as set forth in the agreements between the parties.

9

**FIRST CAUSE OF ACTION FOR RECOVERY UNDER INSURANCE CODE SECTION**

10
**11580 OF THE CALIFORNIA INSURANCE CODE**

11     15.    Plaintiff incorporates by reference and realleges herein paragraphs 1 thought 14 of

12
this complaint.

13     16.    An actual controversy has arisen and now exists between plaintiff and defendants

14 regarding the amount owed by Navigators under the policies of insurance issued to Jim Bird and the

15 damages as agreed to by the parties.  Plaintiff contends that there is in excess of $1,000,000 of

16 potentially covered "property damage," including covered loss of use, owed under  the  agreements

17 between the parties.

18     17.    On information and belief, plaintiff believes that defendants will dispute this

19 contention.

20     18.    Plaintiff desires a judicial determination of the amounts owed by Navigators under

21 the policies of insurance and under the agreements between plaintiff, Jim Bird and Navigators, up to

22 the stipulated judgment of $1,000,000.

23

**SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF**

24     19.    Plaintiff incorporates by reference and realleges herein paragraphs 1 thought 18 of

25 this complaint.

26     20.    An actual controversy has arisen and now exists between plaintiff and defendants

27 regarding their respective rights and obligations under the policies of insurance in that plaintiff

28

4

1    contends the Navigators' policies cover the damages sustained by Thompson Pacific in the amount

2    of $1,000,000.

3        21.    On information and belief, defendants dispute plaintiff's contention.

4        22.    Plaintiff desires a judicial determination and declaration of plaintiff's and defendants'

5    respective rights and duties under the insurance contract and specifically that plaintiff's is entitled to

6    recover the full amount of the judgment entered in Sacramento Superior Court Action No.

7    03AS03633.

8        WHEREFORE, plaintiff prays for judgment as follows:

9        1.    For damages in an amount to be proven at trial;

10       2.    For interest on the sum awarded from April 20, 2006;

11       3.    For costs of suit, supplementary payments and attorneys' fees as appropriate;

12       4.    For such other and further relief as the court may deem proper.

13

14   Date: April 13, 2007                          HINSHAW & CULBERTSON

15

16

17                                                 ROBERT J. ROMERO
                                                   MERLE J. PANICK
18                                                 Attorneys for Defendant
                                                   THOMPSON PACIFIC CONSTRUCTION, INC.
19   2948236v1

20

21

22

23

24

25

26

27

28

5

Law Offices of
MATHENY SEARS LINKERT & LONG, LLP
DANN S. DeMUND, SBN 142957
3638 American River Drive
Post Office Box 13711
Sacramento, California 95853-4711
Telephone (916) 978-3434
Fax (916) 978-3430

Attorneys for Defendant JIM BIRD CONSTRUCTION, INC.

IN THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| THOMPSON PACIFIC CONSTRUCTION, INC., A California corporation, <br><br> Plaintiff, <br><br> v. <br><br> JIM BIRD CONSTRUCTION, INC.; STAR INSURANCE COMPANY; AMERICAN CONTRACTORS INDEMNITY COMPANY and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO. 03AS03633 <br><br> JUDGMENT |

## JUDGMENT

Judgment is hereby entered in favor of Plaintiff THOMPSON PACIFIC CONSTRUCTION, INC. and against Defendant JIM BIRD CONSTRUCTION, INC. in the amount of one million dollars ($1,000,000.00) pursuant to the Stipulation Regarding Judgment submitted concurrently herewith. Both parties waive fees and costs. Enforcement of the money judgment entered in favor of Plaintiff THOMPSON PACIFIC CONSTRUCTION is stayed and enforcement is barred as to JIM BIRD CONSTRUCTION, INC. pursuant to the covenant not to execute filed concurrently herewith and no assets of JIM BIRD CONSTRUCTION may be levied against and no liens may be created against JIM BIRD CONSTRUCTION, INC. based on this judgment

Dated: APR 20 2006

LOREN E. McMASTER
JUDGE OF THE SUPERIOR COURT

JUDGMENT



Law Offices of
MATHENY SEARS LINKERT & LONG, LLP
DANN S. DeMUND, SBN 142957
3638 American River Drive
Post Office Box 13711
Sacramento, California 95853-4711
Telephone (916) 978-3434
Fax (916) 978-3430

Attorneys for Defendant JIM BIRD CONSTRUCTION, INC.

IN THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

|  |  |
|---|---|
| THOMPSON PACIFIC CONSTRUCTION, INC., A California corporation, | CASE NO.03AS03633 |
| | STIPULATION REGARDING JUDGMENT AND JUDGMENT |
| Plaintiff, | |
| v. | |
| JIM BIRD CONSTRUCTION, INC.; STAR INSURANCE COMPANY; AMERICAN CONTRACTORS INDEMNITY COMPANY and DOES 1 through 50, inclusive, | Trial Readiness Conference: December 19, 2005 |
| Defendants. | |

**STIPULATION**

Defendant JIM BIRD CONSTRUCTION, INC. ("Bird") hereby stipulates to have judgment entered against it and for Plaintiff THOMPSON PACIFIC CONSTRUCTION, INC. ("Thompson") in the amount of one million dollars ($1,000,000.00) for the damages alleged by Thompson set forth as follows:

1.    Remedying the Cold Water System due to allegations that when Thompson water tested the cold water system, Thompson discovered flooded soils in the surrounding areas, heaving and collapsing of pavement, collapsing sidewalks, cracked concrete, and over saturated soils in the landscaping rendering the pavement, concrete and landscaping unusable for their intended purpose. In order to repair the damage and address the cause of the damage, Thompson contends that it excavated through the completed work of other subcontractors, including the 3'-4' of final fill over

1   the trench, excavated the water soaked soil, which had changed the moisture content of the soil,

2   repaired the leaks, dried out the soil, then replaced the backfill, compacted the backfill and did the

3   final backfill, final grading, landscaping and paving.

4        2.     Check Valves, Backflow Prevents, Water Meters :

5        During testing, Thompson allegedly found water saturating the surrounding soils resulting in

6   loss of compaction in soils, heaving and collapsing of pavement, collapsing sidewalks, cracked

7   concrete and dead plants in the landscaping, rendering them unusable for their intended purpose and

8   requiring repair and/or replacement.  While investigating the damage and making the necessary

9   repairs, Thompson claims that Bird failed to clean or plug the pipes which allowed water to leak out

10   into the surrounding soils requiring Thompson to make repairs to the soils, pavement, sidewalks, and

11   concrete.

12        3.     Cold Water and Fire Valves

13        During testing, Thompson asserts that it found loss of compaction in the soils beneath the

14   sidewalks and pavement, collapsing sidewalks and heaving and collapsing pavement causing these

15   areas to become unsuitable for their intended use.  Thompson claims that Bird installed the cold

16   water and fire valve at the middle school without the required sleeves and markers which allowed the

17   water to leak to the surrounding soils and required Thompson to remove and repair the soils,

18   pavement and sidewalks.

19        4.     Fire Hydrants

20        While testing the fire system, Thompson alleges that it found water saturating the

21   surrounding soils, heaving and collapsing pavement and flooded landscaping which had to be

22   repaired and replaced.  Thompson claims damages resulting from water leaking out of the systems

23   which it contends was caused by Bird failing to properly install the lugs on the fire hydrants

24   requiring Thompson to make the repairs to the surrounding areas and remove the standing water.

25        5.     Cold Water Risers

26        During testing of the cold water system, Thompson asserts that it discovered saturated soils in

27   the landscaping rendering the soils unusable for their intended purpose.  Thompson alleges that Bird

28   installed the wrong cold water risers (C-900 instead of ductile pipe) for the high school booster

1   pump. To have access to make the repairs, Thompson asserts that it was required to excavate

2   through the finished work above the trench, remove and replace the riser, and install new concrete

3   thrust blocks and patch up the finished work above the trench, repair the defective work, backfill,

4   compact and redo other work it contends was damaged.

5          6.      3" Gas Lines

6          During testing of the gas lines, Thompson claims to have discovered that Bird had installed

7   3" gas piping instead of the 4" required under the plans and specifications and that Thompson had to

8   locate, excavate, replace the gas lines, and replace the backfill.

9          7.      1" Gas Line

10         After Bird ceased work at the project, Thompson alleges that it found that Bird had installed a

11  1" gas line to the learning resources center when the plans and specifications required a 2" line

12  causing Thompson to excavate, remove and replace the existing line, and re-backfill the trench.

13         8.      Cold Water Stubout

14         During water testing of the cold water system, Thompson claims it saw water flooding the

15  surrounding soils, killing plants and leaving the landscaping not suitable for their intended use.

16  Thompson contends that it investigated the flooding and found that Bird had failed to cap or mark

17  the stubouts requiring Thompson to remove and replace the damaged landscaping.

18         9.      Tee Markings

19         Thompson asserts that Bird failed to mark the location of the tees in the main gas or cold

20  water lines between the learning resource center and the H-A building so that Thompson was

21  required to excavate to locate them.

22         10.     Cold Water Markings

23         While testing the cold water system, Thompson claims that it discovered water flooding the

24  surrounding soils, killing plants and rendering the landscaping not suitable for its intended use.

25  Thompson alleges that the way Bird installed the valves allowed the water to leak out of the system

26  requiring Thompson to excavate through the finished work above the trench, remove and replace the

27  damaged soils, make the necessary repairs, then reinstall the damaged landscaping.

28         11.     Fire System

1    When Thompson water tested the fire system, it contends that it found flooding in the

2    landscaping, heaving and collapsing of the pavement, collapsing sidewalks, and cracked concrete

3    rendering the landscaping, pavement and concrete not usable for their intended purpose.  Thompson

4    alleges that the fire system had leaked allowing the water to flood out.  In order to make the required

5    repairs, Thompson claims it had to dig through the pavement and/or concrete, finished backfill and

6    fine grading and landscaping to get to the fire system, then replace the pavement, concrete and

7    landscaping.

8        12.    12" Fire Line

9    During water testing, Thompson asserts that it found heaving and collapsing pavement, loss

10   of support and settlement of curb and gutters, and flooding of the landscaping and that Thompson

11   was unable to use those areas for their intended use.  Thompson asserts that it investigated the source

12   of the damage and discovered that water was leaking out of the fire line so that Thompson had to dig

13   through the landscaping, finish grading, and final backfill compacted by other subcontractors then

14   remove and replace the fire line and thrust blocks, remove and aerate the saturate soils, replace the

15   aerated soils then reinstall the final backfill, finish grading, and replace the pavement, curb and

16   gutters and landscaping.

17       13.    C-900 Vertical Stand Pipe

18   During water testing of the water line, Thompson claims it discovered water flooding into the

19   landscaping making the landscaping unusable caused by Bird installing C-900 vertical stand pipe to

20   tie-in to the middle school booster pump instead of the required ductile iron pipe with flange fittings

21   which allowed water to leak out of the water line.  To make the required repairs, Thompson alleges

22   that it had to excavate and remove the thrust blocks, replace the piping, install new thrust blocks,

23   replace and re-compact the backfill, then replace the damaged landscaping.

24       14.    12" Fire and 8" Cold Water Lines

25   During water testing of the fire and water lines, Thompson asserts that it discovered

26   infiltration of muddy rain water into the lines and plumbing fixtures in the buildings installed by

27   others which had been caused by Bird's failure to cover or cap the tie-in tees for the backflow

28   preventor assemblies which required Thompson to remove and repair the damaged fixtures and lines.

4

15.    Flush and Clean Fire System.

Thompson claims Bird failed to keep the 12" fire pipe clean during installation which allowed the debris in the pipes to contaminate the lines after Bird abandoned the Project and required Thompson to expose, dismantle, flush, clean and reinstall the pipeline.

16.    Marking Sanitary Sewer, Storm Drain, Gas and Cold Water Lines

During testing, Thompson alleges that it found voids in the soils supporting the sidewalks and pavement, heaving and collapsing pavement, collapsing sidewalks, cracked concrete, and flooded landscaping. Thompson asserts that it found that Bird failed to mark the ends of the sanitary sewer, storm drain, gas and cold water lines and backfilled the lines without any markings allowing water to leak out of the lines. Thompson claims it had to hand dig through the final backfill, fine grading, and landscaping done by others then replace them after making the necessary repairs and replace the sidewalks, pavement and landscaping.

17.    Pressure Testing Gas System

Thompson alleges that during water testing, it discovered heaving and collapsing pavement, collapsing sidewalks, cracked concrete, and flooded landscaping caused by water leaking out of the gas system. Thompson had to hand dig through the final backfill, final grading, and landscaping done by others, locate the leaks, repairs the leaks, remove and aerate the saturated soils, then re-backfill the trench and repair the pavement, sidewalks, concrete and landscaping.

18.    Sanitary Sewer System Testing

Thompson claims that during testing of the sanitary sewer, it discovered collapsing and heaving pavement, collapsing sidewalks, loss of stability around installed manholes and flooded landscaping which prevented Thompson from using those areas for their intended purpose. Thompson asserts that it uncovered that water was leaking out of the sanitary sewer pipeline installed by Bird requiring Thompson to repair the damaged areas and repair the leaks.

19.    Storm Drains and Sewer System

Thompson asserts that during testing of the storm drain and sewer system, it found collapsing drain inlets in the storm drains, with loss of stability in the sewer system manholes, heaving and collapsing of the pavement and flooded landscaping. Thompson claims it found that Bird had

5

1  allowed the storm drains to become clogged with debris and the drain inlets had not be properly

2  sealed allowing water to flood out of the system requiring Thompson to remove the storm drains,

3  pump out the excess water, remove and aerate the damaged soils, replace the soils, then reinstall the

4  storm drains, drain inlets, manholes, backfill, and redo the final backfill, final grading, landscaping,

5  and pavement.

6      20.    Loss of Damages

7      Thompson contends that Bird's work was to have been completed by July 29, 2002 but its

8  work was not complete until the repairs to it were completed on March 1, 2003, seven months after

9  July 29, 2002. From October 2002 to March 2003, Thompson claims it lost the use of its equipment,

10  staff and incurred additional job site expenses while repairing the property damage caused by Bird's

11  work.

12      THOMPSON PACIFIC CONSTRUCTION, INC. hereby stipulates that this judgment will

13  not be executed against JIM BIRD CONSTRUCTION, INC., and its officers, directors and

14  shareholders, including but not limited to Jim Bird, Lisa Bird and Dennis Bird. THOMPSON

15  PACIFIC CONSTRUCTION, INC. hereby stipulates not to levy or lien against any assets of JIM

16  BIRD CONSTRUCTION, INC. The purpose of this stipulation is to permit Plaintiff THOMPSON

17  PACIFIC CONSTRUCTION, INC. to pursue an action against NIC INSURANCE COMPANY, the

18  insurance carrier for JIM BIRD CONSTRUCTION, INC., pursuant to California Insurance Code

19  section 11580. THOMPSON PACIFIC CONSTRUCTION, INC. stipulates that it will file a

20  satisfaction of judgment and withdraw the judgment against JIM BIRD CONSTRUCTION, INC. and

21  render it void and file a dismissal with prejudice of the complaint within thirty days of obtaining a

22  settlement or judgment entered in the California Insurance Code section 11580 action against NIC

23  INSURANCE COMPANY.

24      Judgment is hereby entered in favor of Plaintiff THOMPSON PACIFIC CONSTRUCTION,

25  INC. and against Defendant JIM BIRD CONSTRUCTION, INC. in the amount of one million

26  dollars ($1,000,000.00) Both parties waive fees and costs. Enforcement of the money judgment

27  entered in favor of Plaintiff THOMPSON PACIFIC CONSTRUCTION is stayed and enforcement is

28  barred as to JIM BIRD CONSTRUCTION, INC. pursuant to the covenant not to execute filed

1  concurrently herewith and no assets of JIM BIRD CONSTRUCTION may be levied against and no

2  liens may be created against JIM BIRD CONSTRUCTION, INC. based on this judgment.

3

4  DATED: March____, 2006         MATHENY SEARS LINKERT & LONG LLP

5

6                                 By:_____
                                      DANN S. DeMUND, Attorneys for
7                                     JIM BIRD CONSTRUCTION, INC

8

9  DATED: February 23, 2006       McINERNEY & DILLON, P.C.

10

11                                 By:_____
                                      QUINLAN S. TOM, Attorney for Plaintiff
12                                    THOMPSON PACIFIC CONSTRUCTION, INC.

13

14 DATED: February ____, 2006      THOMPSON PACIFIC CONSTRUCTION, INC.

15

16

17                                 By:_____
                                      PETER THOMPSON
18

19 DATED: February ____, 2006      JIM BIRD CONSTRUCTION, INC.

20

21

22                                 By:_____
                                      JIM BIRD CONSTRUCTION, PRESIDENT

23

24

25

26

27

28



# COMMERCIAL LINES POLICY
## COMMON POLICY DECLARATIONS
# NIC INSURANCE COMPANY

6 INTERNATIONAL DRIVE - SUITE 100
RYE BROOK, NY 10573

**GS102262**
Renewal of Number

Policy No. GS204831

**Named Insured and Mailing Address**
(No., Street, Town or City, County, State, Zip Code)

JIM BIRD
DBA: JIM BIRD CONSTRUCTION
3314 CADMAN RD.
FREMONT, CA 94538

**Producer and Mailing Address**
(No., Street, Town or City, County, State, Zip Code)

MONARCH E & S INSURANCE SERV
2667 CAMINO DEL RIO SO, #307
SAN DIEGO, CA 92108

Tax State  CA

**Policy Period:**    From  09-26-2002   to  09-26-2003    at 12:01 A.M. Standard Time
at your mailing address shown above.

**Form of Business:** Individual

**Business Description:** EXCAVATION CONTRACTOR

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | | PREMIUM |
|---|---|---|
| Commercial Property Coverage Part | $ | Not Covered |
| Commercial General Liability Coverage Part | $ | 29,353.00 |
| | $ | |
| | $ | |
| | $ | |
| | TOTAL ADVANCE PREMIUM $ | 29,353.00 |
| Other Charges:  Policy Fee | $ | 175.00 |
| Inspection Fee | $ | 125.00 |
| State Tax | $ | 889.59 |
| Stamp Fee | $ | 74.13 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | TOTAL $ | 30,616.72 |

**Form(s) and Endorsement(s) made a part of this policy at time of issue *:**
BJP190-0(11/85), ANF159 (06/96), IL0017 (11/85), S2000 (8/91)

* Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned: 10-07-02    JCW    By _____
Countersignature

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S)
AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1983, 1984

-INSURED-

10/08/2005 18:27 FAX 510 465   6        MCINERNEY/DILLON                    ☒031

# NOTICE

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NON-ADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

D-2 FORM (1/1999)



## SERVICE OF SUIT

It is agreed that service of process in suit may be made upon

> Navigators California Insurance Services
> Attn: Noel Higgitt
> 433 California St., Suit 820
> San Francisco, CA 94104

and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon the Company behalf in the event such a suite shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true an lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ANF 159  (06/96)

10/08/2005 18:28 FAX 510 465       MCINERNEY/DILLON                   ☑033

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Policy No. GS204831

Effective Date: 09-26-2002
12:01 A.M. Standard Time

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products--Completed Operations) | $ 2,000,000 | |
| Products--Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Fire Damage Limit | $ 50,000 | Any One Fire |
| Medical Expense Limit | $ 5,000 | Any One Person |

### LOCATION OF PREMISES

Location of All Premises You Own, Rent or Occupy:
3314 CADMAN RD., FREMONT, CA 94538

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| EXCAVATION | 94007 | 250,800 (p) | INCL. | 116.95 | INCL. | 29,331 |
| CONTRACTOR-SUBCONTRACTED WORK | 91583 | 2,000 (c) | INCL. | 10.868 | INCL. | 22 |

Total Advance Premium    29,353

| | | |
|---|---|---|
| (a) area - per 1000 sq.ft. | (m) admissions - per 1000 | (e) each |
| (s) gross sales - per $1000 | (p) payroll - per $1000 | (c) total cost - per $1000 |
| | | (u) units |

### FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
CG2154A (01/96), ANF032 (01/99), ANF043 (12/97), ANF130 (06/98), ANF150 (07/99), ANF153 (05/97), ANF158 (08/99)
ANF162 (01/99), ANF164 (01/99), ANF169 (07/99), ANF170 (04/00), ANF172 (01/01), ANF175 (03/02), CG0001 (07/98)
CG0300 (01/96), CG2134CM(11/85), CG2147 (07/98), CG2160 (09/98), CG2243 (11/85), IL0021 (11/85)

Information Omitted if shown elsewhere in the policy.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
This page alone does not provide coverage and must be attached to a Commercial Lines Common Policy Declarations Page.
Common Policy Conditions, Coverage Part Coverage Form(s) and any other applicable forms and endorsements.

S2000 (8/91)

-INSURED-




THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Description and Location of Operation(s):

**ALL LOCATIONS COVERED BY WRAP-UP INSURANCE PROGRAMS**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:
(1) Provides coverage identical to that provided by this Coverage Part;

(2) Has limits adequate to cover all claims; or

(3) Remains in effect.

CG 21 54 A 01 96



IL 00 21 11 85

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material";

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

   "Nuclear facility" means:

      (a) Any "nuclear reactor";

      (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plu-

1

Copyright, Insurance Services Office, Inc., 1983, 1984

Hait Forms & Services
Reorder No. 14-9051

10/08/2005 18:30 FAX 510 46      MCINERNEY/DILLON      Ø045



IL 00 21 11 85

tonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

00 21 11 85      Copyright, Insurance Services Office, Inc., 1983, 1984

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising from or related to "subsidence".

"Subsidence" includes, but is not limited to, settling, expansion, sinking, slipping, falling away, caving in, shifting, eroding, rising, tilting, mud flow, or any other movement of land or earth including earthquake and landslide.

ANF 032 (01/99)



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BLANKET ADDITIONAL INSURED ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Name of Person or Organization:**

> Any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy **and is approved by the Company in writing within 30 days** of the inception of the contract or agreement, or the inception of this policy, whichever is later.

**WHO IS AN INSURED** (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule as an insured but only with respect to the following:

1.    Liability arising out of your ongoing operations performed for that insured by or for you, or

2.    Liability arising out of the ownership, maintenance, or use of premises while leased to you, or

3.    Liability arising out of the maintenance, operation or use by you of equipment while leased to you by such person(s) or organization(s), or

4.    Operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

Neither the coverages provided by this insurance policy nor the provisions of this endorsement shall apply to any claim arising out of the sole negligence of any additional insured or any of their agents/employees.

ANF 043 (12/97)

10/08/2005 18:31 FAX 510 46_   _6   MCINERNEY/DILLON   ☑048



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INDEPENDENT CONTRACTORS

The insured hereby represents and warrants that:

1.   Commercial general liability insurance coverage for "bodily injury" and "property damage" will be required for all contractors and sub-contractors performing work or operations on behalf of any insured; and the insured shall obtain certificates of insurance from all contractors and sub-contractors performing work or operations on behalf of any insured. Such insurance will be in effect during the duration of the time work is being performed on behalf of any insured; and that

2.   The insured will be named as an "additional insured" on the required coverages described in Item 1. above and that

3.   The minimum limits and coverages thus required of all contractors and sub-contractors performing work or operations on behalf of any insured shall be:

| REQUIRED LIMIT | COMMERCIAL GENERAL LIABILITY FORM |
|---|---|
| $1,000,000 | General Aggregate |
| $1,000,000 | Products/Completed Operations Aggregate |
| $1,000,000 | Each Occurrence; |

4.   Any coverage that might otherwise exist under this policy for claims against any insured based on work done for or on behalf of any insured by a contractor or subcontractor is expressly excess over, and will not contribute with, the insurance required under this endorsement. No duty to defend or indemnify any insured under this policy for any claims that are or should be covered under the policies required of contractors and subcontractors under this endorsement will exist absent exhaustion of all such contractors' and subcontractors' policies.

The insured understands that this insurance policy has been issued upon these representations and warranties.

ANF 130 (06/98)



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN COMMERCIAL GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.  SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is amended as follows:

1.  Paragraphs 2.a and 2.f are deleted in their entirety and replaced by the following:

    a.  Expected or Intended Injury

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property.

    Any claims, accusations or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery are not covered and we shall have no duty to defend the insured from any "suit" seeking damages from any such claim, accusation or charge.

    f.  Pollution

    (1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

    This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire unless that hostile fire occurred or originated:

    (a)  At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment

    of waste; or

    (b)  At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, pollutants.

    As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

    (2)  Any loss, cost or expense arising out of any:

    (a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

    Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes

ANF 150 (07/99)                      Page 1 of 3



material to be recycled, reconditioned, or reclaimed.

**B.    SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** is amended to add the following to paragraph 2.a

"Personal and advertising injury":

(11)    To an "employee" of the insured, arising out of and in the course of employment by the insured.

**C.    SECTION III - LIMITS OF INSURANCE** is amended to add the following to paragraph 5.:

The Each Occurrence Limit is the most we will pay regardless of the number of policy(ies) issued to an insured by us which may apply to the same "occurrence".

**D.    Additional Exclusions** applicable to Coverages A and B.

This insurance does not apply to:

1.    Punitive or Exemplary Damage

A claim of, or indemnification for, punitive or exemplary damages which are imposed by a court of law to punish a wrongdoer and/or to deter others from similar conduct.

If a "suit" is brought against the insured for damages covered by this policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action. We will not have an obligation to pay for any costs, interests or damages attributable to punitive or exemplary damages. This exclusion does not apply in any state where such endorsement is expressly prohibited by state law or insurance department regulations.

2.    Asbestos

"Bodily injury", "property damage", or "personal and advertising injury" arising out of:

a)    The use of asbestos in constructing or manufacturing any good, product or structure; or

b)    The removal of asbestos from any good, product or structure; or

c)    The manufacture, transportation, storage,

service, installation, use, sales, mining, distribution or disposal of asbestos or goods or products containing asbestos; or

d)    Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

e)    Any loss, cost or expense related to any of the above.

3.    Abuse or Molestation

"Bodily injury", "property damage", or "personal and advertising injury" arising out of:

a)    the actual, alleged, or threatened abuse or molestation by anyone of any person while in the case, custody or control of any insured; or

b)    the negligent employment, investigation, supervision, reporting to the proper authorities, or failure to so report or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph a) above.

Abuse, as used in this exclusion, includes but is not limited to the negligent or intentional infliction of physical, emotional or psychological injury or harm on any person while in the care, custody or control of any insured.

4.    Communicable Disease / Sexual Action

"Bodily injury", "property damage", or "personal and advertising injury" arising out of the:

a)    Transmission, actual or alleged, of a communicable disease by any insured, including, but not limited to, Acquired Immune Deficiency Syndrome (AIDS);

b)    Failure to perform services which were either intended to or assumed to prevent communicable diseases or their transmission to others; or

c)    Sexual action, including but not limited to any verbal or nonverbal communication, behavior or conduct with sexual connotations or purposes, whether for sexual gratification,





discrimination, intimidation, coercion or other purpose, regardless of whether such action is alleged to be intentional or negligent.

5. Professional Services

"Bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering or failure to render any professional service.

6. Athletic Participants

"Bodily injury", "property damage", or "personal and advertising injury" to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature.

7. Lead

"Bodily injury", "property damage", or "personal and advertising injury" arising out of exposure to, inhalation of, or ingestion of lead or any substance or matter containing lead or the residue of lead.

8. Cross Suits

The liability of any Named Insured for any "bodily injury", "property damage", or "personal and advertising injury" which is sustained by or occurs to any Named Insured.

E. **SECTION V - DEFINITIONS** is amended as follows:

1. Paragraph 5. "Employee" is amended as follows:

"Employee" includes a "leased worker" and a "temporary worker".

2. Paragraph 9. "Insured contract" is amended to add the following:

However, an "insured contract" does not include that part of any contract or agreement that indemnifies any person or organization for "bodily injury" or "property damage" arising from an "occurrence" caused by the sole negligence of that person or organization.

3. Paragraph 19. "Temporary worker" is amended as follows:

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet

seasonal or short-term work load conditions. "Temporary worker" includes casual labor.



## Minimum Earned Premium Endorsement

**This endorsement changes the policy. Please read it carefully.**

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part

Item 5 of **A. Cancellation** of the **Common Policy Conditions** is replaced by the following:

5.   If we cancel this policy we will send the first Named Insured any premium refund due; the refund will be pro rata.

The premium shown on the applicable Coverage Part Declarations Page is __25__% fully earned if you cancel.

ANF 153 (05/97)




**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - CONDOMINIUMS, TOWNHOUSES, APARTMENTS, AND MULTIPLE HOUSE DEVELOPMENTS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising out of any work involving, related to, or performed about the premises of a:

1.    Condominium;

2.    Townhouse;

3.    Apartment; or

4.    Any project or premise on which more than 10 houses or dwelling units have been built or are in any stage of development, planning, or construction.

This exclusion does not apply to:

1.    Non-structural remodeling of not more than one unit on premises described in paragraphs 1., 2. and 3. above; or

2.    Structural or non-structural remodeling or additions to a single house in a development described in paragraph 4 above.

ANF 158 (08/99)

10/08/2005 18:32 FAX 510 465___8    MCINERNEY/DILLON    @054



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### EXCLUSION — CLAIMS, DAMAGES AND INJURIES FIRST OCCURRING PRIOR TO POLICY PERIOD

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  This insurance, including our duty to defend a "suit", shall not apply to "bodily injury", "property damage", or "personal and advertising injury" that:

    1.  Was discovered before the inception date of this policy; or

    2.  The insured knew or should have known occurred before the inception date of this policy stated in the Declarations.

B.  This insurance, including our duty to defend a "suit", shall not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury" that was first filed or asserted against any "insured" before the inception date of this policy as stated in the Declarations.

C.  For purposes of this exclusion:

    1.  Damage or injury is discovered when damage or injury is first observed by anyone, whether or not an "insured".

    2.  Discovery of some damage or injury caused by an "occurrence" or by a "personal and advertising injury" offense constitutes discovery of all damage or injury caused by the same "occurrence" or offense.

ANF 162 (01/99)



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION — PRIOR COMPLETED OR ABANDONED WORK

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Date: 09/24/2000

(If no entry appears above, the Date will be the inception date of the policy to which this endorsement is made part of)

A.    This insurance does not apply and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising out of "your work":

    1.    completed prior to the date shown in the schedule of this endorsement; or

    2.    abandoned by the insured prior to the date shown in the schedule of this endorsement.

B.    Paragraph 16.a.(2).(c) of SECTION V - DEFINITIONS is deleted in its entirety and replaced by the following:

    (c)    When that part of the work done at a job site has been put to its intended use by any person or organization.

ANF 164 (01/99)

10/08/2005 18:32 FAX 510 46    MCINERNEY/DILLON    056

 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MINIMUM PREMIUM AMENDMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, paragraph 5., Premium Audit, subparagraph b. is deleted in its entirety and replaced by the following:

b.    The annual premium shown in this Coverage Part as advance premium is the minimum premium (i.e. the lowest amount) for which coverage is provided for the policy period. At the close of each policy period we will compute the earned premium for that period. If the amount is greater than the advance minimum premium, an audit additional premium notice will be sent. Audit additional premiums are due and payable upon notice to the first Named Insured.

ANF 169 (07/99)

10/08/2005 18:32 FAX 510 46    6    MCINERNEY/DILLON    ☑058




## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION – MOLD

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

1. "Bodily injury", "property damage", or "personal and advertising injury" arising out of, resulting from, or caused or contributed to by any fungus, mildew or mold or exposure to any fungus, mildew, or mold; or

2. The costs of abatement, mitigation, removal or disposal of any fungus, mildew or mold.

This exclusion also applies to:

1. Any supervision, instructions, recommendations, warnings or advice given or which should have been give in connection with the above; and

2. Any obligation to share damages with or repay someone else who must pay Damages because of such injury or damage, either in equity or in tort.

3. The duty to defend or pay sums which may be owned under the Supplementary Payments provisions of the policy.

ANF 172  (01/01)



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

DESIGNATED WORK EXCLUSION – E.I.F.S.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that this insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" as respects the following:

1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

2. Any work or operations with respect to any exterior component, fixture or feature of any structure if any "exterior insulation and finish system" is used on any part of that structure.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene or other materials, and
2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and
3. A reinforced base coat, and
4. A finish coast providing surface texture and color.

ANF 175 (3/2002)

10/08/2005 18:33 FAX 510 4   66    MCINERNEY/DILLON            ☑060




## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 03 00 01 96

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| 12:01 A.M. standard time | GS204831 |
| Named Insured<br>DBA: JIM BIRD CONSTRUCTION | Countersigned by |
| | (Authorized Representative) |

### SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $ | | $ |
| OR | | | |
| Bodily Injury Liability and/or<br>Property Damage Liability Combined | $ | | $    1,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage," however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

·10/08/2005 18:33 FAX 510 465⸱    MCINERNEY/DILLON    ☑061



c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence."

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury," a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage," person includes an organization.

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence," regardless of the number of persons or organizations who sustain damages because of that "occurrence."

**C.** The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence," claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994
CL-838 (1-96)
CG 03 00 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 21 34 11 85

EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY PART

**SCHEDULE**

Description of your work:

**CONSTRUCTION MANAGEMENT FOR A FEE**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of "your work" shown in the Schedule.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown hereon.

CG2134CM (11-85)

10/08/2005 18:33 FAX 510 46    8    MCINERNEY/DILLON    @063





COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.



COMMERCIAL GENERAL LIABILITY
CG 21 60 09 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

a. Any actual or alleged failure, malfunction or inadequacy of:

   (1) Any of the following, whether belonging to any insured or to others:

      (a) Computer hardware, including microprocessors;

      (b) Computer application software;

      (c) Computer operating systems and related software;

      (d) Computer networks;

      (e) Microprocessors (computer chips) not part of any computer system; or

      (f) Any other computerized or electronic equipment or components; or

   (2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed Paragraph 2.a.(1) of this endorsement.

   due to the inability to correctly recognize, process, distinguish, interpret or accept the Year 2000 and beyond.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 2.a. of this endorsement.

CG 21 60 09 98

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render an professional services by or for you, including:

1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

2. Supervisory, inspection or engineering services.

CG 22 43 11 85        Copyright, Insurance Services Office, Inc., 1984, 1992

1998 OCCURRENCE FORM

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

## APPENDIX G

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

damage" arising
or threatened dis-
e, migration, re-
nts":

s, site or location
y time owned or
or loaned to, any
s subparagraph

stained within a
ed by smoke,
oot from equip-
at building;

operty damage"
oe held liable, if
and the owner
remises, site or
added to your
nal insured with
ning operations
dditional insured
or location and
or location is not
ed or occupied
ned to, any in-
at additional in-

operty damage"
moke or fumes

site or location
ime used by or
s for the han-
processing or

ny time trans-
, treated, dis-
as waste by or
rson or organi-
y be legally re-

(d) At or from any premises, site or location
on which any insured or any contractors
or subcontractors working directly or in-
directly on any insured's behalf are
performing operations if the "pollutants"
are brought on or to the premises, site
or location in connection with such op-
erations by such insured, contractor or
subcontractor. However, this subpara-
graph does not apply to:

 (i) "Bodily injury" or "property damage"
arising out of the escape of fuels, lu-
bricants or other operating fluids
which are needed to perform the
normal electrical, hydraulic or me-
chanical functions necessary for the
operation of "mobile equipment" or
its parts, if such fuels, lubricants or
other operating fluids escape from a
vehicle part designed to hold, store
or receive them. This exception
does not apply if the "bodily injury"
or "property damage" arises out of
the intentional discharge, dispersal
or release of the fuels, lubricants or
other operating fluids, or if such fu-
els, lubricants or other operating
fluids are brought on or to the prem-
ises, site or location with the intent
that they be discharged, dispersed or
released as part of the operations
being performed by such insured,
contractor or subcontractor;

 (ii) "Bodily injury" or "property damage"
sustained within a building and
caused by the release of gases,
fumes or vapors from materials
brought into that building in connec-
tion with operations being performed
by you or on your behalf by a con-
tractor or subcontractor; or

 (iii) "Bodily injury" or "property damage"
arising out of heat, smoke or fumes
from a "hostile fire".

(e) At or from any premises, site or location
on which any insured or any contractors
or subcontractors working directly or in-
directly on any insured's behalf are
performing operations if the operations
are to test for, monitor, clean up, re-
move, contain, treat, detoxify or neutral-
ize, or in any way respond to, or assess
the effects of, "pollutants".

(2) Any loss, cost or expense arising out of
any:

(a) Request, demand, order or statutory or
regulatory requirement that any insured
or others test for, monitor, clean up, re-
move, contain, treat, detoxify or neutral-
ize, or in any way respond to, or assess
the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a gov-
ernmental authority for damages be-
cause of testing for, monitoring, clean-
ing up, removing, containing, treating,
detoxifying or neutralizing, or in any way
responding to, or assessing the effects
of, "pollutants".

However, this paragraph does not apply to
liability for damages because of "property
damage" that the insured would have in the
absence of such request, demand, order or
statutory or regulatory requirement, or such
claim or "suit" by or on behalf of a govern-
mental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out
of the ownership, maintenance, use or en-
trustment to others of any aircraft, "auto" or
watercraft owned or operated by or rented or
loaned to any insured. Use includes operation
and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you
own or rent;

(2) A watercraft you do not own that is.

(a) Less than 26 feet long; and

(b) Not being used to carry persons or
property for a charge;

(3) Parking an "auto" on, or on the ways next
to, premises you own or rent. provided the
"auto" is not owned by or rented or loaned
to you or the insured;

(4) Liability assumed under any "insured con-
tract" for the ownership, maintenance or
use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising
out of the operation of any of the equip-
ment listed in Paragraph f.(2) or f.(3) of the
definition of "mobile equipment".

# APPENDIX G

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III -- Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

1998 OCCURRENCE FORM

duct" arising

arising out of
ided in the
izard".

ne damaged
the damage
alf by a sub-

r Property

property" or
ally injured,

icy or dan-
ict" or "your

one acting
contract or
s terms.

the loss of
sudden and
product" or
its intended

ired

ost or ex-
the loss of
repair, re-
disposal of:

withdrawn
use by any
known or
adequacy or

al and ad-

damage
or tempo-
n of the
ies to this
Limits Of

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III -- Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

APPENDIX G

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Page 6 of 13

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

ured in the "suit".

ied against the
jgment we pay. If
applicable limit of
any prejudgment
l of time after the

t of any judgment
he judgment and
to pay, or depos-
judgment that is
nsurance.

e the limits of in-

t a "suit" and an
named as a party
ndemnitee if all of

nitee seeks dam-
s assumed the li-
h a contract or
l contract";

such liability as-

r the cost of the
has also been as-
e same "insured

and the informa-
urrence" are such
exist between the
he interests of the

nsured ask us to
efense of that in-
and agree that we
l to defend the in-
nd

the investigation,
of the "suit";

s copies of any
mmonses or legal
onnection with the

er whose coverage
emnitee; and

th respect to coor-
licable insurance
nitee; and

**(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

    **a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

    **b.** The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        **(1)** "Bodily injury" or "personal and advertising injury":

            **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

            **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

            **(d)** Arising out of his or her providing or failing to provide professional health care services.

        **(2)** "Property damage" to property:

            **(a)** Owned, occupied or used by,

            **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed.

**APPENDIX G**

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

; the most we will

erage C;

, except damages
ir "property dam-
cts-completed op-

ations Aggregate
er Coverage A for
iry" and "property
cts-completed op-

il and Advertising
bay under Cover-
es because of all
sustained by any

ever applies, the
st we will pay for

and

rage C

i "property dam-
rence".

ge To Premises
ve will pay under
use of "property
while rented to
fire, while rented
iy you with per-

Expense Limit is
erage C for all
odily injury" sus-

rage Part apply
al period and to
months, starting
id shown in the
od is extended
of less than 12
period will be
od for purposes

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

---

G 00 01 07 98    CG 00 01 07 98    Copyright, Insurance Services Office, Inc., 1997       □

APPENDIX G

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

APPENDIX G

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17

18

19

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

1998 OCCURRENCE FORM

'ent, including con-
to substantially the
s.

ry" means injury,
injury", arising out
offenses:

prisonment;

n, wrongful entry
t of private occu-
or premises that a
by or on behalf of

of material that
or organization or
janization's goods.

of material that
ivacy;

ising idea in your

yright, trade dress
ent".

quid, gaseous or
including smoke,
s, chemicals and
s to be recycled,

hazard":

d "property dam-
mises you own or
product" or "your

our physical pos-

en completed or
ur work" will be
e earliest of the

called for in your
oleted.

o be done at the
impleted if your
at more than one

ork done at a job
intended use by
ation other than
r subcontractor
oject.

e, maintenance,
ment, but which
I be treated as

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product";

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Re:            Thompson Pacific Construction, Inc., et al. v. Navigators Insurance Company, et al.
Court:         United States District Court, Northern District of California
Action No:

## PROOF OF SERVICE

I declare that I am over the age of 18, not a party to the above-entitled action, and am an employee of Burnham Brown whose business address is 1901 Harrison Street, 11th Floor, Oakland, Alameda County, California 94612 (mailing address: Post Office Box 119, Oakland, California 94604).

On May 17, 2007, I served the following document(s) in the following manner(s):

**DEFENDANT NAVIGATORS INSURANCE COMPANY'S NOTICE TO OF REMOVAL UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)**

☐    **FACSIMILE:** By transmitted a true copy, via facsimile electronic equipment transmission (fax) to the office(s) of the addressee(s) at the fax number(s) below. The number of pages transmitted (including the Proof of Service Form) was    .

☐    **OVERNIGHT:** By placing a copy thereof into envelope(s) bearing the name(s) and address(es) and county(ies) of the person(s) to be served by commercial carrier service for overnight delivery as shown below.

☒    **PERSONAL DELIVERY BY MESSENGER:** By consigning the document(s) listed above to a messenger service for personal delivery to the following person(s) at the following address on the date set forth below.

Robert J. Romero                              Plaintiff THOMPSON PACIFIC CONSTRUCTION
Hinshaw & Culbertson
One California Street, 18th Floor
San Francisco, CA 94111
415-362-6000
415-834-9070

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:        May 17, 2007

Edith Bloodgood

PROOF OF SERVICE                                        CASE NO.